IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| JESSICA MARQUEZ, | 2:09-cv-01254-SU |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| HARPER SCHOOL DISTRICT NO. 66, a public entity, also known as MALHUER COUNTY SCHOOL DISTRICT NO. 66; and DENNIS SAVAGE, Harper School District No. 66 Superintendent; LYNN HAUETER, member of Harper School District No. 66 Board of Directors; SHELLY DENNIS, Chair, Harper School District No. 66 Board of Directors; LISA FISHER, member of Harper School District No. 66 Board of Directors; RON TALBOT, Principal, Harper School District No. 66; BARBARA OLSON, member of Harper School District No. 66 Board of Directors, each and all in their individual and official capacities, | |
| Defendants. | |

Craig A. Crispin
Shelley D. Russell
CRISPIN EMPLOYMENT LAWYERS
1834 SW 58th, Suite 200
Portland, OR 97221

      Attorneys for Plaintiff

Bruce M. White
Christie L. Moilanen
MITCHELL LANG & SMITH
101 SW Main Street
Portland, OR 97204

Kathryn M. Pratt
LAW OFFICE OF KATHRYN M. PRATT
18292 SW Santoro Drive
Beaverton, OR 97007

      Attorneys for Defendants

SULLIVAN, Magistrate Judge:

      Plaintiff Jessica Marquez ("plaintiff") filed claims for sex-based discrimination and retaliation in violation of § 1983, Title VII, 42 U.S.C. § 2000e-17, and O.R.S. 659A.030, against Harper School District No. 66, also known as Malhuer County School District No. 66 ("school district") and several administrators and school board members (collectively "defendants"). Plaintiff also filed common law claims for wrongful termination, intentional infliction of emotional distress, and negligence. This Court issued Findings and Recommendations (doc. 51) denying plaintiff's partial motion for summary judgment and granting in part and denying in part defendants' motion for summary judgment. District Judge Anna Brown adopted the Findings and Recommendations (doc. 55). The parties engaged in settlement discussions with District Judge Michael Simon (doc. 56), but the case did not settle. The parties then gave full consent to

Page 2 - OPINION AND ORDER

the jurisdiction of a magistrate judge (doc. 59).

On October 7, 2011, defendants sent an Offer of Judgment which stated, "Pursuant to FRCP 68, defendant offers judgment in the amount of $100,000 plus properly recoverable costs and reasonable attorney fees accrued through the date of this offer." Notice of Acceptance of Offer of Judgment, Ex. A (doc. 60). Plaintiff accepted on October 18, 2011, notifying the Court of her acceptance and serving the proposed judgment on defendants. *Id.* After receiving the proposed form of judgment, counsel discovered that he had submitted the offer with an error and he should not have included attorney fees and costs. Defendants filed a motion to stay entry of judgment to relieve the parties from the offer "made without their authority or which contain[ed] material mistakes." Reply Re Mot. To Stay Entry of Judg. (doc. 64) at 2. On November 10, 2011, the Court issued an Opinion and Order (doc. 75), denying defendants' motion for stay, and entered judgment (doc. 76) in favor of plaintiff and against defendants in the amount of $100,000 plus properly recoverable costs and reasonable attorney fees through October 7, 2011. On November 16, 2011, the Court granted defendants' unopposed motion to stay execution of the judgment, pending disposition of defendants' FRCP 59 and 60 motions (doc. 78). On March 22, 2012, the Court denied defendants' Rule 60(b)(1) motion to set aside the judgment (doc. 115).

Currently pending are plaintiff's motions for attorney fees (doc. 79) and costs (doc. 82), and for supplemental attorney fees (doc. 116) related to opposing the Rule 60(b) motion and for preparing the original fee petition. For the reasons discussed below, the motions for attorney fees and costs are granted in part and denied in part, and the motion for supplemental fees is denied. Plaintiff is awarded $132,209.51 in fees and costs, which reflects $117,887.50 in fees and $14,322.01 in costs.

Page 3 - OPINION AND ORDER

**DISCUSSION**

Pursuant to the express terms of the judgment, plaintiff seeks her "reasonable attorney

fees," in the amount of $230,098.00, which reflects the $184,276.00 requested in the original fee

motion and the $45,822.00 requested in the supplemental fee motion. The supplemental fee

motion requests $12,801.00 for preparing the original fee petition, $28,473.50 for defending the

Rule 60(b) motion, and $4,547.50 for work on the reply memoranda.  No other briefing is

allowed so this amount reflects the complete fee request.  Plaintiff also requests her "properly

recoverable costs" in the amount of $14,322.01.  She brings her motion pursuant to 42 U.S.C. §

1988, O.R.S. 659A.885(3), and O.R.S. 20.107.  Defendants object to an award of any attorney

fees on the grounds that plaintiff  is not a prevailing party.  In the event the Court determines that

plaintiff is entitled to attorney fees, defendants contest the hourly rates sought by plaintiff's

attorneys and support staff  and make general objections to the time records.  Finally, defendants

assert that because some of plaintiff's claims do not qualify for recovery of attorney fees, the

Court should reduce the attorney fee award by 20%.

**I.  Plaintiff's Entitlement to Attorney Fees**

Defendants assert that plaintiff is not a prevailing party and therefore  not entitled to

attorney fees.  The rule in the Ninth Circuit is that "a prevailing party 'should ordinarily recover

an attorney's fee unless special circumstances would render such an award unjust.'"  *Thomas v.

City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424,

429 (1983)).  Such special circumstances include "(1) whether allowing attorney fees would

further the purposes of §1988 and (2) whether the balance of equities favors or disfavors the

denial of fees."  *Id*. at 648 (internal quotation and citation omitted).

Page 4 - OPINION AND ORDER

Defendants primarily contend that in accepting the offer of judgment, plaintiff took advantage of a mistake known to her given the totality of the circumstances surrounding the offer. This Court previously declined to consider any communications during the settlement conference that bears on what plaintiff "should" have known when she accepted the offer of judgment. *See* Opinion and Order (doc. 115) at 6-8. After careful consideration, plaintiff decided to accept the offer as written, and judgment was entered in the amount of $100,000 plus properly recoverable costs and reasonable attorney fees accrued through the date the offer was made. *Id.*

Defendants further attempt to assert that the $100,000 judgment is not the kind of success that entitles plaintiff to attorney fees under § 1988 because it was a technical success and did not otherwise result in a vindication of rights for plaintiff or for the public. In support, defendants cite *Romberg v. Nichols*, 48 F.3d 453, 455 (9th Cir.), *cert. denied*, 516 U.S. 943 (1995) in which the Ninth Circuit declined to award attorney fees to plaintiffs who prevailed at trial, but only received $1 each in nominal damages. The court in *Romberg* noted that, in such an instance, even though the plaintiffs prevailed, they did not "succeed" since they originally sought much more in damages. *Id*. Nor did plaintiffs achieve any other "tangible result," such as "sparking a change in policy or establishing a finding of fact with potential collateral estoppel effects." *Id*. Such tangible results can support an award for attorney fees when there has been only a nominal monetary sum awarded. *Id*. Here defendants overlook the critical fact that plaintiff did not receive a nominal sum, instead, she received $100,000. *See Hensley*, 461 U.S. at 435-36. Plaintiff is not required to demonstrate that her lawsuit, while not financially successful, was successful in other ways, such as changing an important policy. The judgment entered in

Page 5 - OPINION AND ORDER

plaintiff's favor is the kind of success that makes plaintiff a prevailing party for purposes of

demonstrating entitlement to attorney fees under § 1988.

## II.  Step One: Calculation of Attorney Fees

Section 1988 gives the district court the discretion to award a reasonable attorney fee to

prevailing parties in civil rights litigation.  42 U.S.C. § 1988(b).  "The purpose of § 1988 is to

ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*,

461 U.S. at 429.  "[F]ee awards must ensure that civil rights lawyers receive *reasonable*

compensation for their services." *Corder v. Gates*, 947 F.2d 374, 378 (9th Cir. 1991) (emphasis

in original).  "[T]he reasonable fee, as calculated by the district court, may fall short of the actual

fee that the plaintiff's lawyer charges." *Id*. n. 3 (internal citation and quotation omitted).

The Ninth Circuit has adopted a "lodestar/multiplier" approach for assessing the amount

of reasonable attorney fees.  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).

The lodestar/multiplier approach has two parts.   First, the court must multiply the number of

hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  *Id*.

To determine the lodestar amount, the court may consider the following factors set forth in *Kerr*

*v. Screen Guild Extras, Inc.,* 526 F.2d 67, 70 (9th Cir.1975):

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions involved; (3) the skill requisite to perform the legal service
> properly; (4) the preclusion of other employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6) whether the fee is fixed
> or contingent; (7) time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar cases.

*Id*.

Page 6 - OPINION AND ORDER

The party seeking an award of fees bears the burden to produce evidence to support the number of hours worked and the rates claimed. *United Steelworkers of Am. v. Retirement Income Plan for Hourly-rated Employees of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008). "Fee petitions that include inadequate detail or fail to separate time for individual tasks may be totally or partially denied, or apportioned accordingly." *Traeger Grills East, LLC v. Traeger Pellet Grills, LLC*, Civ. No. 3:11-CV-536-AC, 2012 WL 860420, at * 2 (D. Or. Mar. 13, 2012) (citing *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011)). The court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Second, after determining the lodestar amount, the court may adjust the lodestar upward or downward based on the *Kerr* factors that are "not already subsumed in the initial calculation of the lodestar." *Morales*, 96 F.3d at 363-64 (citations omitted). "The lodestar amount is presumptively the reasonable fee, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by [the court] that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citations omitted). The district court has "considerable discretion" in determining the reasonableness of a fee award. *Webb v. Ada County*, 195 F.3d 524, 527 (9th Cir. 1999).

## A. Reasonableness of the Hourly Rate

In calculating the reasonable hourly rate, the district court must look at the prevailing rate in the relevant community "for similar work performed by attorneys with comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir.

1986).  The general rule is that the relevant community for purposes of the prevailing rate is the

forum in which the district court sits.  *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.

1991) (superseded by statute on other grounds).  However, rates outside the forum may be used

"if local counsel was unavailable, either because they were unwilling or unable to perform

because they lack the degree of experience, expertise, or specialization required to handle the

case."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation and internal

quotation marks omitted).  "The fee applicant has the burden of producing satisfactory evidence,

in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing

in the community for similar services of lawyers of reasonably comparable skill and reputation."

*Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).  "Affidavits of the plaintiffs'

attorney and other attorneys regarding prevailing fees in the community, and rate determinations

in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory

evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896

F.2d 403, 407 (9th Cir. 1990).

    Here, the forum district is the District of Oregon.  Plaintiff asks the Court to apply the

rates of the Portland area market since plaintiff's attorneys practice predominately in Portland

and because she was unable to obtain local counsel.  Defendants object and ask the Court to

apply the lower Eastern Oregon rate.  I apply the Portland region's rate as the prevailing market

rate for plaintiff's counsel.  While somewhat limited, I accept plaintiff's evidence that she was

unable to secure adequate counsel in Eastern Oregon as justification for using Portland as the

region for determining the prevailing market rate.  Declaration of Craig Crispin ("Crispin

Attorney Fee Decl.") ¶ 5, November 23, 2011.

Page 8 - OPINION AND ORDER

Throughout the course of this action, plaintiff was represented by three attorneys[1] and several support staff at Crispin Employment Lawyers ("Crispin firm"). Plaintiff's counsel has submitted time records from July 30, 2009 through October 18, 2011.[2] Crispin Attorney Fee Decl. Ex. 4. As for the hourly rates, plaintiff proposes the following:

| | |
|---|---|
| C. Crispin: | $425 |
| S. Russell: | $335 |
| P. Rissberger: | $335 |
| S. Schwint (law clerk): | $125 |
| J. Burnett (paralegal): | $125 |
| V. Beltran (legal assistant): | $95 |

These rates are supported by additional affidavits and time entries submitted by attorneys Craig Crispin ("Crispin") and Shelley Russell ("Russell") as well as the declarations of four additional Oregon attorneys who practice in the civil rights and employment arena or are otherwise knowledgeable regarding reasonableness of the rates requested. Defendants object to the requested hourly rates[3] as excessive and request a reduction of at least 30%.

---

[1] The Court notes that plaintiff documented 13.50 hours expended on behalf of attorney S. Joiner, at a rate of $200 an hour but did not include this amount in the total. Because these fees are not sought in the current motion, I will not otherwise consider them.

[2] Counsel also submits their time records from October 19, 2011 through March 28, 2012, in connection with their motion for fees incurred after the date of the offer of judgment. Declaration of Shelley Russell ("Supplemental Russell Decl.") Ex. A, March 28, 2012. As discussed below, the motion for supplemental fees is denied, so I will not consider plaintiff's supplemental billing records.

[3] Defendants make specific objections only to lead counsel Crispin's hourly rate. However, the court has an obligation to review the petition for reasonableness, even if no objection has been raised. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1993). Thus, I will review all the time records and proposed hourly rates for reasonableness.

Page 9 - OPINION AND ORDER

## 1. Attorneys

To determine the reasonable hourly rate, this court uses the most recent Oregon State Bar Economic Survey as its initial benchmark, although attorneys may argue for higher rates based on inflation, specialty, or any number of other factors. The relevant survey is the 2007 Oregon State Bar Economic Survey ("2007 OSB Survey"), and it provides average, median, and percentile-based hourly rates segregated by state region and years of experience. Counsel argues that the rates should be adjusted upward for a variety of factors, addressed below.

Plaintiff's attorney Crispin requests an hourly rate of $425. Crispin was admitted to the Oregon State Bar in 1982. Crispin Attorney Fee Decl. ¶ 13. At all relevant times, Crispin had between 27-30 years of experience while working on this case. The 2007 OSB Survey indicates that for lawyers practicing in Portland with 21-30 years of experience, the average hourly rate is $277, and the median rate is $275. 2007 OSB Survey at 28. Lawyers with similar experience in the 25th percentile billed an average of $225 per hour, lawyers in the 75th percentile billed an average of $325 an hour, and lawyers in the 95th percentile billed an average of $399 an hour. *Id*.

Plaintiff's other two attorneys, Shelley Russell and Patty Rissberger, request a rate of $335. Russell was admitted to the Oregon State Bar in April 1994. Declaration of Shelley Russell ("Russell Attorney Fee Decl.") ¶ 2, November 23, 2011. Because Russell reached the 16-year benchmark by the time the summary judgment motions were being briefed, I will use the 16-20 years of experience group as the benchmark for setting her hourly rate. [4] The 2007 OSB

---

[4] At the beginning of this litigation, Ms. Russell had 15 years of experience, but as of the writing of this order, she has 18 years of experience, which places her in between two experience

Survey indicates that for lawyers practicing in Portland with this level of experience, the average hourly rate is $267, and the median rate is $275.  2007 OSB Survey at 28.  Lawyers with similar experience in the 25th percentile billed an average of $200 per hour, lawyers in the 75th percentile billed an average of $325 an hour, and lawyers in the 95th percentile an average of $387 an hour.  *Id*.

Attorney Patty Rissberger was admitted to the Oregon State Bar in 1987.  Crispin Attorney Fee Decl. ¶ 32.   She was within the 21-30 years of experience group for all stages of this litigation.  As noted above with respect to Crispin's experience, the 2007 OSB Survey indicates that for lawyers practicing in Portland with 21-30 years of experience, the average hourly rate is $277, and the median rate is $275.  2007 OSB Survey at 28.  Lawyers with similar experience in the 25th percentile billed an average of  $225 per hour, lawyers in the 75th percentile billed an average of $325 an hour, and lawyers in the 95th percentile billed an average of $399 an hour. *Id*.

Here, plaintiff seeks significantly higher rates than the average rates for attorneys with similar years of experience.  Crispin's proposed rate is well-above the 95th percentile of reported fees for attorneys with his level of experience.  Counsel emphasizes the fact that the firm focuses almost exclusively on labor and employment matters, and that Crispin and Russell in particular have limited their practice to representing plaintiffs in employment-related civil rights litigation.  Crispin Attorney Fee Decl. ¶¶ 6, 10-12, 17; Russell Attorney Fee Decl. ¶¶ 1, 3.  Plaintiff contends that the 2007 OSB Survey fails to take this expertise into account.  In support, plaintiff

---

groups identified in the 2007 OSB Survey, the 13-15 year group, and the 16-20 year group.

has submitted four affidavits by attorneys who opine that counsels' hourly rates are appropriate given their expertise and the comparable rates of similarly specialized attorneys with similar years of experience.  *See* Declaration of Beth Creighton ("Creighton Decl.") ¶¶ 16-20; Declaration of Eugene Hallman ("Hallman Decl.") ¶¶ 6-9; Declaration of Dana L. Sullivan ("Sullivan Decl.") ¶¶ 13-21; Declaration of Thomas S. Boothe ("Boothe Decl.") ¶¶ 8-21. Portland attorney Beth Creighton, a former Crispin Employment Lawyer who has similar years of experience as Russell, states that she charges $350 an hour, not taking into account a contingency factor.  Creighton Decl. ¶¶ 1, 3, 13-15.  Similarly, Portland employment and civil rights attorney Dana Sullivan, who also has experience comparable to Russell's, charges $325 an hour.  Sullivan Decl. ¶¶ 3, 6, 8, 16-18.  Portland employment attorney Thomas Boothe, who has been practicing a few years longer than Crispin but who has only been focusing on employment law since 1998, charges between $400-$450 an hour.  Boothe Decl. ¶¶ 1, 6, 22.  Finally, Pendleton lawyer Eugene Hallman, who has been practicing a few years longer than Crispin, but whose practice is limited to general civil litigation, states that when he gets an employment or civil rights case, he always refers these potential clients to Portland counsel since he does not believe that there are attorneys in Eastern Oregon who have the "specialized knowledge to handle such cases." Hallman Decl. ¶¶ 3, 9.

I conclude that counsel has failed to adequately justify their increased rates.  I recognize that Crispin, Russell, and Rissberger have significant experience in the realm of employment civil rights litigation, a specialized area of the law.  Given the nature of this case, however,  I am skeptical of the justification for the enhanced rate.  This was a relatively straightforward single-plaintiff case that concluded after summary judgment.  The burden for plaintiff was not overly

Page 12 - OPINION AND ORDER

complex at that stage and did not necessarily require a particularly high level of expertise. In order to survive summary judgment, plaintiff needed to establish a *prima facie* case of discrimination and retaliation. The burden then shifted to defendants to provide legitimate non-discriminatory reasons for the actions taken, after which plaintiff had to present evidence that the defendants' reasons were pretextual. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *McDonell Douglas Corp v. Green*, 471 U.S. 792, 802 (1973). This Court ultimately concluded, and Judge Brown agreed, that plaintiff presented a *prima facie* case under this burden-shifting framework. However, material issues of fact existed regarding defendants' motivation for taking the allegedly adverse employment actions, precluding summary judgment for plaintiff on her disparate treatment and retaliation claims. Findings and Recommendation (doc. 51) at 24-25, 32; Order (doc. 55) at 3-4. This Court also concluded that material issues of fact existed with regard to plaintiff's common law discrimination claims. The Court granted defendants' summary judgment motion on plaintiff's intentional infliction of emotional distress claim on the grounds that she did not establish her *prima facie* case. Findings and Recommendation at pp. 32-38. Given the relatively straightforward issues regarding the burden-shifting analysis on summary judgment, the fact that plaintiff's motion was denied in its entirety, and the high number of hours billed for summary judgment, I am not persuaded that plaintiff's counsel has justified the increased rates. As discussed more fully below, I have serious doubts that the amount of time spent researching and working on the summary judgment motions was necessary, given the fact that counsel relies upon their expertise in this area of the law in order to justify enhanced rates. Consequently, I conclude that the 2007 OSB Survey is most useful in determining the reasonableness of the proposed hourly rates.

Page 13 - OPINION AND ORDER

Plaintiff also claims that the higher rate is justified because, as a civil rights action, this case was about "enforcing an important public right."   She argues that the purpose of § 1988 is to ensure that civil rights lawyers receive reasonable compensation for their services in taking on such cases, which involve "complexity and risk," and are brought against "substantial corporate or governmental entities."   Pl.'s Memo. in Supp. of Mtn. for Atty. Fees at 6.  Such cases, plaintiff argues,  often last a long time, thereby delaying counsel's compensation for fees and expenses.  *Id*.  While I acknowledge the importance of encouraging civil rights lawyers to take on such cases, I do not find that this case presents any particularly complex or unique issues that justify the significantly higher than average rate requested.

Finally, plaintiff contends that inflation justifies a fee award that reflects their current fee rate, which is higher than those indicated in the 2007 OSB Survey.  In support, plaintiff relies on general Bureau of Labor statistics, arguing that after adjusting for inflation, the proposed rates are "well within the appropriate range."  Pl.'s Reply Memo. in Supp. of Mtn. for Fees and Costs at 6. An "[a]djustment for inflation is not required in every case, however; the question for the district court is the reasonableness of the fee in light of the totality of the circumstances and the relevant factors, including delay in payment."  *Jordan*, 815 F.2d at 1267 n. 7 (citing *Clark v. City of Los Angeles*, 803 F.2d 987, 992-93 (9th Cir. 1986)).  I am not persuaded that such an adjustment is appropriate here.

In a case involving the Crispin firm which was recently litigated in Medford, Oregon, Magistrate Judge Clarke applied the Portland region as the prevailing market rate.  *Hamrick v. Aqua Glass, Inc.*, Civil No. 07-3089-CL, 2010 WL 935478, at * 4 (D. Or. March 12, 2010). There, Judge Clarke awarded plaintiff $46,513.87, which reflected $45,008.70 in hourly attorney

Page 14 - OPINION AND ORDER

fees and $1,505.17 in costs. *Id*. at *1.  Plaintiff sought fees for Crispin in the amount of $425 per hour and for Russell and Rissberger in the amount of $335 per hour.  *Id*. at *4.  Judge Clarke awarded $325 per hour and $290 per hour respectively.  *Id*. at *7.  The case involved similar claims and, a few months after a failed settlement conference, plaintiff accepted defendants' $75,000 offer of judgment, exclusive of attorney fees and costs.  *Id*. at *1-2.  For purposes of the present motion, it is worth noting that *Hamrick* settled while written discovery was ongoing and before any depositions were taken. In the present case, judgment was not entered until after discovery had closed and summary judgment motions had been resolved.  Notwithstanding this fact, the legal and factual similarities between the cases are helpful to the Court in determining the reasonableness of the hourly rates requested by plaintiff's counsel.  *See United Steelworkers*, 896 F.2d at 407.

After taking all of the above into account, I will reduce Crispin's hourly rate to $325 and Russell and Rissberger's rate to $290 for purposes of calculating the lodestar amount.  This amount is consistent with Judge Clarke's decision in *Hamrick* involving the Crispin firm.  *See Hamrick*, 2010 WL 935478, at * 4-7.

### 2.  Other Timekeeping Employees

Plaintiff requests fees for a law clerk, paralegal, and legal assistant.  Law clerk S. Schwint was employed by the Crispin firm as a law student during and after his second year of law school.  Crispin Attorney Fee Decl. ¶ 42.  Plaintiff requests an hourly rate of $125 for Schwint's services.  Paralegal J. Burnett has an Associate of Applied Science Degree in paralegal studies, has experience as a paralegal assistant to the hearings division of the Oregon Bureau of Labor & Industries, and is currently the co-chair of the Oregon Trial Lawyers Association's Legal Staff

Page 15 - OPINION AND ORDER

Section. *Id*. ¶ 37.  Her requested hourly rate is $125, for work related to witness management and interviews, document and discovery management, drafting of routine legal documents, legal research, and trial preparation assistance.  *Id*. ¶ 38-39.  Legal assistant V. Beltran performs primarily clerical duties, but records billable time when her work encompasses a substantive component or the use of skill or discretion.  *Id*. ¶ 40.  Her requested hourly rate is $95.  Defendants make no real objections to these rates.  Again, in accordance with Judge Clarke's decision in *Hamrick*, I find the following reasonable rates: $125 for law clerk services, $100 for paralegal services, and $95 for legal assistant services.  *Hamrick*, 2010 WL 935478, at *7.

## B.  Reasonableness of Hours Billed

The burden to show that the requested number of hours for an attorney fee petition is reasonable is on the party seeking the fee.  *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988), *cert. denied*, 493 U.S. 1035 (1990).  Plaintiff provides declarations from attorneys Crispin and Russell, as well as their billing records, which describe the services rendered by the date, description of the service, the hours, and the relevant hourly rate.  Defendants do not object to plaintiff's overall record keeping, but ask the Court to exclude hours expended for administrative and clerical tasks, excessive legal research, hours related to the summary judgment motions and associated objections, and excessive hours spent reviewing medical records.  Declaration of Bruce White in Opp'n to Pl.'s Mtn. for Atty Fees ("White Attorney Fee Decl.") Ex. A, December 7, 2011.  For most of their objections, defendants do not provide a clear amount that they believe has been billed in error, instead identifying some questionable entries and asserting that the fees should be reduced by at least 30%.  I have carefully reviewed the billing records and make the following findings.

Page 16 - OPINION AND ORDER

### 1. Clerical, Duplicative, or Vague Entries

First, defendants object to charges for administrative tasks such as downloading documents, printing, and organizing records. I agree that such charges must be excluded. "[C]lerical costs are typically considered overhead expenses reflected in the hourly billing rate, and are not properly reimbursable." *Strand v. Auto. Machinists Pension Trust*, Civil No. 06-1193-PK, 2007 WL 2029068, at *5 (D. Or. July 11, 2007) (citing *Missouri v. Jenkins*, 491 U.S. 574, 288 n. 10 (1989)). I have identified the following entries as clerical or administrative and reduce the total hours billed accordingly:

#### a. Attorney Crispin (CAC)

| Date | Hours | Task |
|------|-------|------|
| 9/14/09 | 3.2 | Downloading and organizing documents |
| 9/15/10 | 0.7 | Print and review client documents |
| 10/19/09 | 3.3 | Begin chronology, download board minutes[5] |
| 10/20/09 | 0.2 | Arrange travel |
| 10/21/09 | 1.7 | Continue document analysis; spread sheet organization of facts, documents[6] |
| 10/21/09 | 0.8 | Travel arrangements; secure conference room; prepare docs for travel; phone call with client re: scheduling |

---

[5] I note that for a limited number of entries it is difficult to determine how much time was spent on each task. Here, downloading board minutes is clearly a clerical task that should be excluded, while beginning chronology might be properly billable. Since Crispin has not clarified the time spent on each task, I cannot separate the time spent on the clerical task. Consequently, I will deduct the full 3.3 hours.

[6] This is another instance where Crispin has failed to separate the time spent on clerical versus non clerical tasks and the full amount is deducted.

| 10/27/09 | 0.5 | Approve service arrangements; issue service fee check; phone call re: document disclosure; ECF notice of scheduling order |
|---|---|---|
| 11/6/09 | 0.3 | Correspondence re: service; calendar appearance date |
| 11/19/09 | 0.1 | Phone call with assistant re: acceptance of service, calendar follow-up |
| 12/17/09 | 0.2 | Download defendant's answer to amended complaint; compare with original complaint |
| 1/4/10 | 0.4 | Scheduling |
| 1/8/10 | 0.2 | Review notes for phone call |
| 1/19/10 | 0.2 | Scheduling |
| 2/12/10 | 0.4 | Check discovery status, update action plan, respond to email re: discovery extension |
| 3/9/10 | 0.2 | Outline and plan deposition scheduling |
| 3/19/10 | 0.2 | Deposition scheduling / calendaring |
| 3/30/10 | 0.2 | Deposition scheduling |
| 4/9/10 | 0.2 | Deposition scheduling |
| 5/19/10 | 0.3 | Conferral and scheduling |
| 5/24/10 | 0.2 | Scheduling |
| 5/26/10 | 1.2 | Update deponent list, scheduling |
| 6/11/10 | 0.7 | Deposition scheduling |
| 6/14/10 | 0.2 | Status check, forward email to paralegal |
| 6/15/10 | 0.4 | Scheduling |
| 6/16/10 | 0.2 | Scheduling |
| 6/17/10 | 0.9 | Scheduling, internet research re: deposition location |
| 6/18/10 | 0.7 | Research potential deposition location |
| 6/21/10 | 0.8 | Email re: deposition scheduling; locations; review of article and photographs |

Page 18 - OPINION AND ORDER

| 6/22/10 | 0.8 | Travel arrangements; verify court reporter arrangements |
|---|---|---|
| 6/23/10 | 0.8 | Plan for deposition preparation, verify court reporter scheduling |
| 7/14/10 | 0.4 | Receive, download, process transcripts |
| 7/15/10 | 1.5 | Organize deposition documents, exhibits binder |
| 7/16/10 | 0.5 | List serve inquiry / response |
| 7/21/10 | 0.5 | Scheduling |
| 7/27/10 | 0.3 | Scheduling / calendar review |
| 7/28/10 | 0.9 | Calendaring, summary of case materials |
| 9/7/10 | 0.2 | Scheduling |
| 9/20/10 | 0.3 | Travel arraignments |
| 9/21/10 | 0.1 | Issue witness fee |
| 9/24/10 | 0.4 | File transfer |
| 9/27/10 | 2.1 | Collect and organize exhibits |
| 10/12/10 | 0.3 | Scheduling |
| 10/15/10 | 1.7 | Organize exhibits |
| 11/16/10 | 0.2 | Scheduling |
| 3/24/11 | 0.2 | Download F&R decision from ECF |
| 6/17/11 | 0.2 | ECF notice from court re: MSJ |
| 8/26/11 | 0.2 | Scheduling |
| 8/31/11 | 0.3 | Scheduling; calendaring |
| 9/25/11 | 0.4 | Internet research & email to client re: accommodations while in town for mediation |
| **TOTAL HOURS DEDUCTED: 30.9** | | |

/ / /

/ / /

Page 19 - OPINION AND ORDER

**b. Attorneys Russell (SDR/SR) and Rissberger (PTR)**

| Date | Hours | Task |
|------|-------|------|
| 11/2/10 | 0.3 | Pulling cases cited in defendants' MSJ (SR) |
| **TOTAL HOURS DEDUCTED:  0.3** | | |

**c. Paralegal (JAB)**

| Date | Hours | Task |
|------|-------|------|
| 3/17/10 | 0.2 | Deposition scheduling |
| 3/19/10 | 0.2 | Deposition scheduling |
| 5/24/10 | 1.1 | Memo re: scheduling |
| 6/21/10 | 0.7 | Email re: service of subpoena |
| 9/14/10 | 0.2 | Conferral re: scheduling |
| 9/24/10 | 0.4 | Confirm depositions, court reporter, notices, assess outstanding discovery issues |
| **TOTAL HOURS DEDUCTED: 2.8** | | |

**d.  Legal Assistant (VCB)**

| Date | Hours | Task |
|------|-------|------|
| 2/25/10 | 0.3 | Docket new case management dates |
| 10/27/10 | 0.2 | Calendaring summary judgment docket dates; prepare working copies of documents |
| 10/29/10 | 0.4 | Process judge's copy of MSJ |
| 11/18/10 | 0.1 | Calendaring docket due dates |
| 4/6/11 | 0.2 | Process copy of objections to F&R |
| **TOTAL HOURS DEDUCTED:  1.2** | | |

Defendants also object to those entries that appear to be duplication of effort, and in one instance where time was charged for work on another case.  Without question, any entries that

reflect work charged on another case must be deleted.  Defendants have identified one instance

on August 6, 2010, which was for 0.3 hours of paralegal time at a rate of $125, for a total of

$37.50.  This objection is well-taken and this time entry is subtracted from the fee, as reflected in

the table below.

Similarly, any entries that reflect duplication of effort or for attorneys performing

administrative tasks that could be more economically performed by other staff members should

be subtracted.  Attorneys must make a "good faith effort to exclude from a fee request hours that

are excessive, redundant, or otherwise unnecessary," and good billing practice requires that

duplicated effort among timekeepers be excluded from the fee request and also that only one

attorney bill for time spent in conference with multiple attorneys.  *Strand*, 2007 WL 2029068, at

*6 (citing *Hensley*, 461 U.S. at 434).  Where duplicative entries have been identified, I have

excluded the duplicative hours billed by the timekeeper commanding the lower billing rate.  The

following entries are duplicative the total hours billed are reduced accordingly:

**a. Attorneys Russell (SDR/SR) and Rissberger (PTR)**

| Date | Hours | Task |
|------|-------|------|
| 8/21/09 | 0.2 | Email conferral re: client (SR) |
| 9/10/10 | 0.2 | Conferral re: medical records (SR) |
| 11/19/10 | 0.2 | Conferral re: MSJ response (SR) |
| **TOTAL HOURS DEDUCTED: 0.6** | | |

**b. Law Clerk (SAS)**

| Date | Hours | Task |
|------|-------|------|
| 7/30/10 | 3.1 | Deposition excerpting |
| 8/2/10 | 1.8 | Deposition excerpting |

Page 21 - OPINION AND ORDER

| 8/3/10 | 0.9 | Deposition excerpting |
|--------|-----|------------------------|
| 8/4/10 | 1.8 | Deposition excerpting |
| **TOTAL HOURS DEDUCTED: 7.6** | | |

### c. Paralegal (JAB)

| Date | Hours | Task |
|------|-------|------|
| 10/9/09 | 2.5 | Preparing chronology and witness spreadsheets |
| 12/11/09 | 3.3 | Prepare preliminary draft of discovery |
| 1/4/10 | 2.0 | Identify witnesses, discovery scheduling |
| 2/5/10 | 0.7 | Discovery status check, email to CAC |
| 2/19/10 | 0.5 | Email to CAC re: deponent list |
| 2/17/10 | 0.3 | File review; discovery status and deadline confirmation |
| 3/19/10 | 0.3 | Index responses to discovery requests |
| 3/25/10 | 0.5 | Correspondence with client re: discovery |
| 6/24/10 | 1.3 | Conferral with CAC, court reporter scheduling, phone call and email with opposing counsel re: scheduling |
| 7/28/10 | 0.8 | Motion for discovery |
| 8/6/10 | 0.3 | Work on wrong case (as noted above) |
| 8/20/10 | 1.4 | Process client documents for production |
| 9/22/10 | 0.2 | Conferral re: subpoena error |
| 11/16/10 | 2.8 | Excerpt deposition testimony; prepare exhibits; draft declaration |
| **TOTAL HOURS DEDUCTED: 16.9** | | |

### d. Legal Assistant (VCB)

| Date | Hours | Task |
|------|-------|------|
| 10/27/09 | 0.9 | Service process arraignments |
| 1/21/10 | 0.2 | Process discovery requests |

Page 22 - OPINION AND ORDER

| 7/9/10 | 0.3 | Protective order |
|---|---|---|
| 8/20/10 | 0.3 | Prepare client documents for production |
| 9/25/10 | 0.3 | Conferral re: subpoena error |
| 10/15/10 | 0.4 | Prepare exhibits |
| **TOTAL HOURS DEDUCTED: 2.4** | | |

Finally, there are a few vague entries that do not fully identify the work performed.  Since it is the plaintiff's burden to "demonstrate that the compensation it seeks was for hours reasonably related to the litigation, such failure results in the disallowance of any hours for which the task is unclear." *Strand*, 2007 WL 2029068, at * 6 (internal citation and quotation omitted). Here, there are three entries from Mr. Crispin, which fail to adequately specify the substance of the tasks performed and are therefore excluded from the fee:

| Date | Hours | Task |
|---|---|---|
| 1/11/10 | 0.2 | Email exchanges re: discovery responses |
| 7/6/10 | 0.8 | Phone call re: status of lawsuit, anticipated trial date, complaint; forward copy of complaint by email[7] |
| 10/8/10 | 0.4 | Receive executed declaration; assignment re: processing for disclosure; email to client |
| **TOTAL HOURS DEDUCTED: 1.4** | | |

To summarize, the following are excluded from plaintiff's recorded hours on the grounds that the entries are clerical, duplicative, or vague:

Attorney Crispin: 32.3 hours (30.9 clerical, 1.4 vague)

---

[7] This entry could also be deducted as clerical since forwarding a copy of the complaint by email is a clerical task.

Attorney  Russell:  0.9 hours (0.3 clerical, 0.6 duplicative)

Law Clerk Schwint: 7.6 hours (all duplicative)

Paralegal Burnett: 19.7 hours (2.8 clerical, 16.9 duplicative)

Legal Assistant Beltran: 3.6 hours (1.2 clerical, 2.4 duplicative)

### 2.  Legal Research

Second, defendants make general objections to the amount of time spent on legal research

on the grounds that  plaintiff's counsel, self-proclaimed experts in this area,  should not have had

to spend as much time performing legal research on the precise area of the law with which they

are so experienced.  I agree.  My review of plaintiff's billing records reveals that Crispin billed

7.2 hours and Russell billed 3 hours for research prior to filing the complaint on October 26,

2009.  They each billed an additional .4 hours for research related to drafting the amended

complaint, filed just over a week later on November 5, 2009.  This does not take into account

other time billed for reviewing documents, conferring, or drafting and reviewing the pleadings.

As noted above, this was not an exceptionally complicated case, and counsel purports to be

highly experienced in the area of employment civil rights cases.  Consequently, I find that only

limited time was required to research and draft the pleadings, and I reduce the claimed research

hours in half, reducing 3.8 hours from Crispin and. 1.7 hours from Russell for research related to

the drafting of the complaint and the amended complaint.  The amount of time spent researching

legal issues related to the summary judgment motions is not reflected in this figure, and is

discussed more fully below.

### 3.  Summary Judgment and Objections to F&R

Defendants ask the Court to reduce the amount of hours expended on the summary

judgment motions.  Defendants contend that a review of the time records reveals that plaintiff's

counsel logged 132 hours, for a total of $43,500.00, in responding to defendants' motion for

summary judgment and preparing plaintiff's summary judgment motion.  Defendants ask that

this amount be reduced by 30%, which amounts to a reduction of $13,050.00.  They also contend

that the 16.8 hours (approximately $6,000) plaintiff's counsel spent objecting to the Court's

Findings and Recommendations is excessive.

My own review of the billing records reveals that between October 18, 2010, and January

20, 2011, the date of the oral argument on the motions, plaintiff's counsel logged 138.1 hours[8]

related to the summary judgment motions.  This calculation includes extensive time for

excerpting and summarizing deposition testimony,  research, conferral, and drafting of plaintiff's

memos in support of her own summary judgment motion, as well as her response to defendants'

motion.  This calculation also takes into account the time spent traveling to Pendleton for the oral

argument, as well as the oral argument itself.  Counsel also logged 16.8 hours objecting to this

Court's Findings and Recommendations.  My breakdown of the hours is as follows:

(1)  57.7 hours spent on plaintiff's summary judgment motion, filed October 28, 2010:

| | |
|---|---|
| Attorney Crispin | 30.6 hours |
| Attorney Russell | 16.8 hours |
| Paralegal | 10 hours |
| Legal Assistant | 0.3 hours |

---

[8]  As discussed above, I have deducted some billed time as clerical, duplicative, or vague.
From the entries related to the summary judgment motions, these deductions are the following:
1.2 hours from Crispin, 0.5 hours from Russell, 2.8 hours of paralegal time, and 0.5 hours of
legal assistant time. These deductions have been removed from my total calculation of hours
spent on the summary judgment motions and are not reflected in the breakdown below.

(2) 47 hours spent on response to defendants' summary judgment motion, filed on November 17, 2010:

| | |
|---|---|
| Attorney Crispin | 2.7 hours |
| Attorney Russell | 38.5 hours |
| Paralegal | 5.8 hours |

(3) 15.7 hours spent on plaintiff's reply to her summary judgment motion, filed on November 30, 2010:

| | |
|---|---|
| Attorney Crispin | 1.2 hours |
| Attorney Russell | 14.6 hours |
| Paralegal | 0.2 hours |

(4) 7.2 hours spent preparing for oral argument:

| | |
|---|---|
| Attorney Crispin | 5.4 hours |
| Attorney Russell | 1.8 hours |

(5) 10.5 hours spent by attorney Crispin for the oral argument, including travel to Pendleton on January 20, 2011.

(6) 16.8 hours spent objecting to this Court's Findings and Recommendation

| | |
|---|---|
| Attorney Crispin | 2 hours |
| Attorney Russell | 14.6 hours |
| Legal Assistant | 0.2 hours |

I agree with defendants that the amount billed for work on the summary judgment motions is excessive. As noted above, this was not an exceptionally difficult or complex employment rights case. In fact, plaintiff moved for summary judgment on the grounds that no material issue of fact existed because the division of labor between plaintiff and the male custodian was obviously gender based and thus, on its face, discriminatory. Factually, this case did involve a large number of documents generated by both sides in an attempt to carry their respective burdens regarding the reasons for the allegedly discriminatory actions. Legally, the issues presented at summary judgment were common to employment discrimination claims, since they concerned whether plaintiff established her *prima facie* case, whether defendants had a

Page 26 - OPINION AND ORDER

legitimate business reason for their conduct, and whether there was evidence that defendants'

reasons were pretextual.  *See Dunn v. CSK Auto, Inc.*, CV-05-116-HU, 2006 U.S. Dist. LEXIS

82724, *16 (D. Or. Nov. 13, 2006) (discussing reasonableness of hours submitted in responding

to a summary judgment motion in a Title VII discrimination claim).  This Court ultimately

determined, and Judge Brown agreed, that material issues of fact existed regarding defendants'

motivation for taking the allegedly adverse employment actions.  Given the relatively

straightforward issues in the burden-shifting analysis required for summary judgment and the fact

that plaintiff's motion was denied in its entirety, I am not persuaded that the high number of

hours billed was reasonable.

Counsel bills over 120 hours for work spent briefing the summary judgment motions.  I

agree with defendants that this amount is excessive and I reduce each timekeeper's hours by

30%, which amounts to the following reductions: 10.35 hours from Crispin, 20.97 from Russell,

4.8 hours from paralegal Burnett, and 0.09 hours from legal assistant Beltran.

Since only  Crispin traveled to Pendleton to argue the summary judgment motion, I

deduct the 1.8 hours spent by Russell preparing for oral argument, but will award Crispin all of

his billed hours related to the argument, which includes 5.4 hours for preparing for the argument

and 10.5 hours for the argument itself, which includes his travel to and from Pendleton.

With regard to the 16.8 hours plaintiff's counsel billed for filing objections to the

Findings and Recommendation, the Court notes that Judge Brown observed that, in making

objections, plaintiff "simply reiterates the arguments contained in her Response to Defendants'

Motion for Summary Judgment."  Order (doc. 55) at 3.  Recycling old arguments does not justify

nearly $6,000 in attorney fees, which by my calculation, includes over $2,000 for research alone

Page 27 - OPINION AND ORDER

Consequently, I deduct the hours billed by each timekeeper regarding the objections by 30%, which results in  following reductions: 0.6 hours from Crispin, 4.38 from Russell, and 0.06 from legal assistant Beltran.

To summarize, the following are excluded from the hours billed by counsel for summary judgment and objections:

Attorney Crispin: 10.95 hours
Attorney Russell: 27.15 hours
Paralegal Burnett: 4.8 hours
Legal Assistant Beltran: 0.15 hours

### 4.  Medical Records

Defendants object to the "significant time" in August and September 2010, that counsel spent reviewing plaintiff's records, researching and securing plaintiff's medical records, and attempting to confer with plaintiff's healthcare providers.  Defendants contend that this time was excessive in light of the fact that, even though the records are "indeed voluminous," the "substantive, meaningful records produced by plaintiff . . . are not extensive" since they consist primarily of plaintiff's own notes and diaries.   Defs. Memo in Opp'n to Fees and Costs (doc. 100), at 7.  Moreover, plaintiff ultimately produced just 81 pages of medical and dental records, many of which were well before the date of plaintiff's alleged ailments and injuries stemming from her discrimination claims.

Defendants object to several specific time entries, which were identified by plaintiff as devoted to review of client documents.  Defendants also object to .20 hours billed by attorney Rissberger on September 9, 2010, amounting to $67.00, for a telephone call to Dr. Phillips'

Page 28 - OPINION AND ORDER

office that includes the notation that the recording cut off the message.  As noted above, I have reviewed all of the entries submitted by plaintiff and removed many of the entries that I deemed duplicative, including some of those challenged here with regard to document review of plaintiff's records.  I decline to further reduce the fees related to document review.  However, I agree that $67.00 for leaving a message at a doctor's office is too high and I decline to award fees for this.  Consequently, Rissberger's fee will be reduced by 0.20 hours.

### 5.  Supplemental Motion

In her supplemental motion for fees filed on March 28, 2012, plaintiff seeks to recover $12,801.00 for 31.2 hours spent preparing her original fee petition, and $28,473.50 for 79.3 hours spent defending defendants' Rule 60(b) motion.  Plaintiff seeks an additional $4,547.50 for 10.7 hours of work on her reply to her attorney fee petition, since defendants' response was lengthy, raised several new issues, and required additional research.  Defendants contend that these requests are not only excessive but also that the plain language of the offer of judgment unambiguously limits plaintiff's entitlement to fees and costs to those incurred *prior* to the date of the judgment.  Defendants argue that she may not recover any fees incurred after that date.

It is well-established that "[a]s a general rule, 'time spent in establishing entitlement to an amount of fee awardable under section 1988 is compensable.' " *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir.1995), *cert. denied*, 518 U.S. 1018 (1996) (quoting *Clark*, 803 F.2d at 992). "However, a settlement offer may be conditioned upon the waiver of such fees." *Id*. (citation omitted).  " 'Any waiver or limitation of attorney fees in settlements of [civil rights] cases must be clear and unambiguous.' " *Holland v. Roeser*, 37 F.3d 501, 503-04 (9th Cir. 1994) (quoting *Erdman v. Cochise County Arizona*, 926 F.2d 877, 881 (9th Cir. 1991) (citation omitted)).  In

Page 29 - OPINION AND ORDER

ascertaining whether the offer limits post-offer fees, "courts should apply the usual rules of contract interpretation to offers of judgment[.]" *Id*. at 504 (citation omitted). These rules dictate that "ambiguities will be construed against the offeror as the drafting party and, where such ambiguities are found to exist, extrinsic evidence of the parties' actual intentions will be examined to clarify those ambiguities and arrive at the meaning of the offer's material terms." *Herrington v. County of Sonoma*, 12 F.3d 901, 907 (9th Cir. 1993) (citing *Erdman*, 926 F.2d at 880).

In support of their argument, defendants rely primarily on *Guerrero*, 70 F.3d at 1112-13, where the Ninth Circuit affirmed the district court's ruling that the language of the offer of judgment at issue unambiguously limited fees and costs to those incurred prior to the date of judgment. The offer in *Guerrero* provided in relevant part:

> Pursuant to FRCP 68, defendants hereby allow judgment to be given against them in favor of plaintiff . . . for a total of ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($1,500) plus reasonable attorney fees and costs incurred by this plaintiff prior to the date of this offer in an amount to be set by the court.

*Id*.

Plaintiff argues that *Holland*, 37 F.3d at 504, controls. There, the Ninth Circuit concluded that the language regarding attorney fees was ambiguous and thus did not limit the recovery of post-offer fees. *Id*. In *Holland*, the offer stated in relevant part that defendants would pay "costs now accrued and reasonable attorney fees as determined by the court." *Id*. The Ninth Circuit concluded that the language "costs now accrued" clearly waived the recovery of all post-offer costs. *Id*. However, the court decided that the language regarding attorney fees was ambiguous and awarded fees incurred in preparing the post-offer fee petition. *Id*.

Page 30 - OPINION AND ORDER

Here, the offer is almost identical to the offer in *Guerrero*, since it contains clear limiting language. The offer states that "[p]ursuant to FRCP 68, defendant offers judgment in the amount of $100,000 plus properly recoverable costs and reasonable attorney fees accrued through the date of this offer." Notice of Acceptance of Offer of Judgment, Ex. A (doc. 60). I find nothing ambiguous about the phrase "plus properly recoverable costs and attorney fees accrued through the date of the offer." The mere fact that a post-offer fee motion and cost bill would be required as an express condition of the offer does not render the language of the offer ambiguous. Nor do I find plaintiff's argument that the offer is ambiguous because it contains the conditional phrases "properly recoverable" and "reasonable." Those conditions merely indicate that the court must determine the appropriateness and reasonableness of the fee that is ultimately awarded. By their plain language, these conditions do not otherwise relate to the cut-off date for purposes of fee entitlement. Consequently, plaintiff is limited to the recovery of attorney fees and costs incurred prior to the date of the offer. Plaintiff's supplemental fee motion is denied.

### C. Lodestar Calculation

Based on the foregoing, I award $117,887.50 for hours reasonably expended on this action. I calculate the lodestar as follows:

| Name | Rate | Hours[9] | Total |
|---|---|---|---|
| Attorney Crispin | $325 | 266.15 hours<br><br>*(reflects 313.2 requested hours, less 32.3 as clerical/vague, less 3.8 hours for research, less 10.95 for work on SJ motions)* | $86,498.75 |

[9] The Court is using plaintiff's estimation of her total hours as presented in her original briefing in support of her motion for fees and costs. Pl.'s Memo. in Supp. of Mtn. for Atty. Fees at 3.

| Attorney Russell | $290 | 80.95 hours<br><br>*(reflects 110.7 requested hours, less 0.9 as clerical/duplicative, less 1.7 hours for research, less 27.15 for work on SJ motions)* | $23,475.50 |
|---|---|---|---|
| Attorney Rissberger | $290 | 2.5 hours<br><br>*(reflects 2.7 requested hours, less .20 hours for voicemail to doctor's office)* | $725.00 |
| Law Clerk Schwint | $125 | 3.5 hours<br><br>*(reflects 11.1 requested hours, less 7.6 as duplicative)* | $437.50 |
| Paralegal Burnett | $100 | 64.8 hours<br><br>*(reflects 89.3 requested hours, less 19.7 as clerical/duplicative, less 4.8 for work on SJ motions)* | $6,480.00 |
| Legal Assistant Beltran | $95 | 2.85 hours<br><br>*(reflects 6.6 requested hours, less 3.6 as clerical/duplicative, less 0.15 for work on SJ motions)* | $270.75 |
| | | **LODESTAR TOTAL** | $117,887.50 |

## III. Step Two: Adjustment of the Lodestar

It is within the discretion of the district court to adjust the lodestar figure downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable. *Hensley*, 461 U.S. at 435-36. The court may also exercise its discretion and adjust the figure upward in "rare" and "exceptional" cases. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S.546, 565 (1986). However, the presumption is that the lodestar figure represents a reasonable fee. *See Miller v. Los Angeles Cty. Bd. Of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987).

Defendants move for a 20% reduction for all of plaintiff's requested time on the grounds

Page 32 - OPINION AND ORDER

that some of her claims do not include an entitlement to attorney fees.  Defendants assert that of

plaintiff's eight claims, only five allow for an award of attorney fees, and with the exception of

the state claim for discrimination, any attorney fee award is completely discretionary.  However,

as defendants concede, the facts and proof for all claims were "intermingled," and all claims

except for one (state claim for intentional infliction of emotional distress) survived summary

judgment.  I have also considered the *Kerr* factors and determined that no further adjustment to

the lodestar is necessary and I award attorney fees in the amount indicated above.

## IV.  Costs

Costs are generally awarded to the prevailing party in a civil action as a matter of course

unless the court directs otherwise.  FRCP 54(d).  The expenses which may be taxed as costs are

enumerated in 28 U.S.C. § 1920 as follows:

> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic
> transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for
> use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of
> interpreters, and salaries, fees, expenses, and costs of special interpretation
> services under section 1828 of this title.

Of the $14,322.01 in costs plaintiff seeks to recover, defendants object only to the

requested $7,225.00 in expert witness fees and costs.   Deducting the requested expert costs

($7,225.00) from the total requested costs ($14,322.01) leaves $7,097.01 in undisputed requested

costs.  These costs are allowed.

Defendants object to the requested $7,225.00 in expert witness fees and costs on the

Page 33 - OPINION AND ORDER

grounds that while 42 U.S.C. § 1988(c) provides that the court may include expert fees as part of the attorney fee in an action under § 1981 or § 1981(a), plaintiff did not seek relief under these sections.  However, there is no dispute that plaintiff can recover these fees under O.R.S. 20.107, which clearly directs that the court "shall" award "expert witness fees reasonably incurred in connection with the discrimination claim," to a plaintiff who prevails on an unlawful discrimination claim.

Plaintiff's counsel engaged two experts, Laura Brown ("Brown"), a psychologist who conducted a psychological evaluation of plaintiff and provided an opinion as to plaintiff's damages, and Walter Lierman ("Lierman"), an economist who projected plaintiff's lost earnings and benefits.  Plaintiff's supporting documents indicate that counsel made two payments to Brown: (1) $3,000 on December 5, 2010, for "review records, interview, assessment," and (2) $4,200 on March 18, 2011, with the notation "expert witness."  Crispin Attorney Fee Decl. Ex. 4 at 50.  At oral argument, counsel clarified that this second payment was for writing the report. There is also a payment of $25.00 to John H. Phillips, M.D. for "medical records." *Id*.  These expenses amount to $7,225.00 in expert fees and costs, which is the total amount sought by plaintiff.  There is no request for payment to Lierman, though there is evidence that he was paid $950 in March 2011 for his time preparing his quantitative economic damages estimate.  Crispin Attorney Fee Decl. Ex. 3, at 36; Ex. 5 at. 5.  Given that counsel has documented their cost expenditures and payments to the expert witnesses in the billing records and exercised sound discretion in omitting Lierman's expert fee, I award the full amount requested for expert fees.

Plaintiff is awarded $7,097.01 in undisputed requested costs and $7,225.00 in expert fees and costs for a total of $14,322.01.

Page 34 - OPINION AND ORDER

**ORDER**

For the reasons set forth above, plaintiff's Motion for Attorney Fees (doc. 79) is

GRANTED IN PART AND DENIED IN PART in the sum of $117,887.50 and the Bill of Costs

(doc. 82) is GRANTED in the sum of $14,322.01.  Plaintiff's  Supplemental Motion for Attorney

Fees (doc. 116) is DENIED.  Plaintiff is entitled to a total of $132,209.51 in fees and costs.

IT IS SO ORDERED.

DATED this 26th day of June, 2012.


   /s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge